[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM
I.
On May 17, 1989, John L. Carusone, Mayor of the Town of Hamden, notified John P. Ambrogio, Chief of Police of that Town, that effective immediately, he was suspended with pay and benefits, pending a hearing as required by the State Statute concerning whether or not he should be dismissed from his position. The charges against him were attached to the letter of Suspension from Mayor Carusone. He was advised that he would have an opportunity to be represented by counsel, to call and cross examine witnesses and to introduce documentary evidence and oral testimony. A hearing was scheduled for a short time later but was subsequently postponed.
Thereafter Mayor Carusone and Chief Ambrogio, by a stipulation CT Page 6034 dated March 5, 1991, agreed that the undersigned Thomas J. O'Sullivan, a State Trial Referee of the State of Connecticut, shall conduct a hearing pursuant to Connecticut General Statutes, 7-278
on the issue whether the Town has just cause to dismiss Chief Ambrogio and whether adequate notice of the specific grounds was given to him, that Judge O'Sullivan while conducting the hearing will act in the capacity of an administrative hearing officer in lieu of Mayor Carusone on the issue of whether just cause exists to terminate Chief Ambrogio and that Judge O'Sullivan shall find facts and reach conclusions of law and shall have all the powers conferred in 7-278 of the General Statutes. This stipulation was marked Court Exhibit 1.
Hearings were held beginning on March 4, 1991 and continuing to May 31, 1991, through twenty-five (25) sessions, and thereafter briefs were filed and oral argument made by the parties.
Under its charter the Mayor is the Chief Executive Officer of the Town. Exhibit A-18, Chapter V. He is responsible for the administration of all departments, agencies and offices in charge of persons or boards, appointed by him and shall supervise and direct the same. Except as otherwise provided in the charter he shall appoint and remove all department heads.
The Chief of the Police of the Town is the head of the Police Department. He shall be appointed by the Mayor subject to the approval of the (Legislative) Council and shall be subject to removal subject to the provisions of the General Statutes, Exhibit A-18, Chapter X.
The statute referred to is 7-278. Its relevant part reads:
 "No active head of a police department of any town, city or borough shall be dismissed unless there is a showing of just cause by the authority having the power of dismissal and such person has been given notice in writing of the specific grounds for such dismissal and an opportunity to be heard in his own defense, personally or by counsel, at a public hearing, before such authority."
Mayor Carusone disciplined Chief Ambrogio by reprimands for various actions from time to time as hereinafter described. No question was raised that Mayor Carusone had the power to impose such discipline.
No question was raised that Mayor Carusone had the power to dismiss Chief Ambrogio under 7-278. Under this statute Mayor Carusone wrote Chief Ambrogio on May 17, 1989 suspending him and setting a date for the hearing. CT Page 6035
The parties hereto agree that under 7-278 and as part of the dismissal process Chief Ambrogio was entitled to receive notice that he would be subject to dismissal for unacceptable conduct on his part.
Mayor Carusone claims that his reprimands and one issued by Mayor Villano a predecessor of his, provided this adequate notice for Chief Ambrogio that his refusal or failure to obey lawful directives and his acts of insubordination were unacceptable and in the future will be met with appropriate and swift discipline. Carusone Trial Memorandum, June 17, 1991, p. 48.
There were (six) 6 such reprimands. All must be examined at length.
On June 17, 1985 Mayor Villano wrote Chief Ambrogio concerning a request for a transfer of $18,000 for overtime in the Police Department. He stated he was extremely unhappy with Chief Ambrogio's inability to administer his department's overtime account in compliance with a directive dated May 10, 1985 and in accord with management standards exercised by other Town Departments. However he said he had no intention of leaving the citizens of Hamden unprotected for essential services and therefore was approving certain items of the request. Mayor Villano then stated:
 "Because of your unwillingness or inability to control these costs in accordance with my order, I am hereby issuing you an official reprimand, a copy of which is being sent to your personnel file. Also this letter is to warn you that failure to comply with budgetary constraints in the future will result in more severe action." Exhibit C-2Z.
On March 23, 1988 Mayor Carusone wrote Chief Ambrogio concerning his failure to take action with respect to instituting a transfer of $99,000 from the Emergency and Contingency Fund to the Police Department Vehicle Replacement Account, although he had been advised to do so by the Police Commission and by directives to do so by the Mayor's office. Mayor Carusone then stated:
 "In view of the above, I have no chance but to find that your inaction is detrimental to the interests of the Town. I must, therefore, reprimand you for your inaction on such an important matter.
 A copy of this letter is being sent to Personnel Director Walter Denton for inclusion in your permanent employment record. CT Page 6036
 Further I direct you yet again to prepare the necessary transfer request and forward it to my office by the close of business on Friday, March 25th. Failure to do so will result in additional disciplinary action." Exhibit C-4C.
On May 9, 1988, Mayor Carusone wrote Chief Ambrogio concerning budgeting of Federal Forfeiture Funds. He stated that Chief Ambrogio had been directed on January 28, 1988, February 2, 1988, March 25, 1988 and April 8, 1988 to prepare a funding proposal for such funds and that he had discussed the matter with Chief Ambrogio personally on May 2, 1988 and that to the date of the letter no budget for these funds had been forthcoming. Mayor Carusone then stated:
 "This is to issue you a reprimand for failing to budget these funds in a timely manner and failing to comply with a mayoral directive issued repeatedly over a period of months.
 Your are hereby directed to provide for me, a proposed budget for Federal Forfeiture funds immediately or be subject to further discipline.
 A copy of this letter is to be placed in your central personnel file. You have the right to draft a response to the issues I have raised and may have such response included in your personnel file." Exhibit C-4H.
On June 24, 1988 Mayor Carusone wrote Chief Ambrogio concerning the overtime budget for the Police Department. It was a three (3) page letter about Chief Ambrogio's handling of overtime and the filing of grievances by the dispatchers Union and the police union for violation of their labor contracts involving overtime. Mayor Carusone then stated:
 "It is unacceptable that you attempt to maneuver me and the Council into the position of having to choose either to transfer funds into your department's budget in the last quarter of the fiscal year or see you violate labor agreements and put the Town's citizens at risk. Good management practices would eliminate this situation. Further it is unacceptable that you have attempted this maneuver in the face of my explicit directive of March 22, 1988.
 In view of the failure to properly manage your department as outlined above and the waste of public funds attributable to this mismanagement, you are hereby reprimanded and warned that if you again fail to live within your overtime budget or violate the labor contracts CT Page 6037 concerning minimum manning or allocation of overtime, you will be suspended. Also, in order to ensure that the dispatcher problem of June 18, 1988 does not occur again, I am, on this date, by separate memo to you and the fire department, ordering Chief Tramontano to take full responsibility for supervision of the communications system." Exhibit C-4T.
On October 19, 1988 Mayor Carusone wrote Chief Ambrogio concerning maintenance of Communications Division and Computer Room Space. He stated:
 "Your attempt to create friction and controversy where none exist, add unnecessary expense to the Town, and place a subordinate in an untenable position is just one more example of your disrespect for authority and obstructionist attitude.
 Consider this letter a reprimand. I further direct that you make no changes concerning the maintenance of facilities without my specific prior approval. In the future, I expect that you will work in a cooperative manner with respect to projects undertaken by the Town.
 A copy of this letter will be placed in your permanent personnel file. You have an opportunity to respond and to have such response placed in your file." Exhibit C-4Z.
On April 21, 1988 Mayor Carusone wrote Chief Ambrogio concerning a meeting in Mayor Carusone's office that morning. The entire letter is as follows:
 "This morning you were ordered to attend a meeting in my office at 10:30 a.m. to discuss Captain Carmen Richitelli. You appeared at my office at 10:30 a.m. with Captain Richitelli and Lieutenant Nolan.
 I asked you to enter my conference room by yourself to meet with me and Town Attorney Manke and exclude Captain Richitelli and Lieutenant Nolan. You refused to enter my conference room without those individuals. I ordered you to enter by yourself and you never entered. My order was legal and reasonable in view of my position as Mayor and yours as department head.
 I believe your performance was a deliberate attempt to undermine my authority as Chief Executive Officer of the Town of Hamden. Also, your insubordination took place in front of my staff as well as two members of your staff, which is an unacceptable management practice. Therefore, I am reprimanding CT Page 6038 you for insubordination and for your failure to follow my lawful order.
 Finally, I am hereby placing you on notice that when I order you to a meeting and you do not meet with me as ordered, you will be suspended without pay until such time as we meet, and if you fail to adhere to any other lawful order by me, you will also be suspended without pay." Exhibit C-5D.
All the above six (6) letters deal with reprimands specifically given to Chief Ambrogio.
Three other letters from Mayor Carusone to Chief Ambrogio also must be reviewed.
On June 28, 1988 Mayor Carusone wrote Chief Ambrogio concerning Chief Ambrogio's memorandum of June 27 to him informing him that the State Police had denied the Town access to the
Collect teletype network. He stated that the State Police have a policy restricting use of the computer to Police personnel and that Chief Ambrogio could have solved the problem by assigning a police officer to access the computer and assist the fire department dispatchers with police related decision making. He stated:
 "It certainly appears that you have willfully disregarded public safety in this case. At the very least, I would have expected that you would have identified a police officer on each shift to take responsibility for the computer system and this would have been acceptable to the State Police. Instead, you have created a problem where none need exist. For this, I hold you entirely responsible. This is another example of your cavalier approach to public safety. As I mentioned in my memo to you of June 24, the trigger for this situation was your disregard for fire dispatch needs. As a result, I am sending this to your personnel file and expect that this kind of thing will never happen again.
 I direct you to immediately contact State Police officials and make the arrangements necessary to conform to their rules and to reestablish the COLLECT system service." Exhibit C-4V.
On April 20, 1989 Mayor Carusone wrote Chief Ambrogio as follows:
 "According to a memo from me to you dated July 27, 1988, and according to the Civil Service job description, Captains plan, direct, coordinate and evaluate the activities of a major division of the Police Department. CT Page 6039
 On April 12, 1989, the Police Commission appointed by unanimous vote Carmen Riccitelli to the rank of Captain without additional conditions effective at midnight the same date.
 Therefore, I hereby order you to carry out the directive of the Police Commission, the directive in my memo of July 27, 1988, and the terms of the Civil Service job description effective immediately.
 I hold you personally responsible for any grievances, prohibited practices or related legal complaints resulting from your actions in this matter.
 A failure to comply with the directive shall force me to take appropriate disciplinary action including, but not limited to, suspension without pay." Exhibit C-5C.
On April 26, 1989 Mayor Carusone wrote Chief Ambrogio in part as follows:
 "In response to your memorandum of April 25, 1989 concerning a meeting I had scheduled for Wednesday, April 26, 1989 at 10:00 A.M., I find your reasons for being unavailable unacceptable. Although it may appear autocratic, I believe that as the Town's Chief Executive, Department Heads and others conform to my schedule, not that I must conform to theirs.
 Unless you can provide me with substantive and overriding reasons why you cannot attend, then I have no alternative but to follow through with my intention of suspending you for insubordination should you fail to appear." Exhibit C-5G.
All these communications add up as follows. Chief Ambrogio was reprimanded six (6) times, Exhibits C-2Z, C-4C, C-4H, C-4T, C-4Z, C-5D; threatened with further action three (3) times, Exhibits C-2Z, C-4C, C-4H; threatened with suspension three (3) times, Exhibits C-4T, C-5C, C-5G; and given a general warning once, Exhibit C-4V. In none of these was there any notice that Chief Ambrogio might be dismissed. This lack of such notice is even more emphasized by Chief Ambrogio's letter to Mayor Carusone on May 16, 1988, about a year prior to the May 17, 1989 letter from Mayor Carusone starting the dismissal proceedings. In this letter Chief Ambrogio said in part:
 "I demand, again, . . . that if you feel that I am not performing my job, then I suggest that you initiate CT Page 6040 removal proceedings so that I might have an opportunity to defend myself." Exhibit A-76.
Mayor Carusone's claim that the reprimands provided adequate notice for Chief Ambrogio that his refusal or failure to obey lawful directives and his acts of insubordination were unacceptable and would subject him to dismissal proceedings is without merit. Any reasonable person looking at the reprimands and the other threats would believe that whatever Chief Ambrogio did would only get him another reprimand. Never was the word "dismissed" used.
I find Chief Ambrogio had no notice from the reprimands and the other threats that Mayor Carusone was considering dismissing him under the statute.
I find that the procedure used by Mayor Carusone in the dismissal process was fatally defective in that Chief Ambrogio was never given notice that any conduct by him would result in proceedings for dismissal under 7-278 of the statutes.
Under these circumstances I find that Chief Ambrogio cannot be dismissed from his position as Chief of Police of the Town of Hamden. Because of this ruling which ends the dismissal proceeding, it is not necessary to review the specific charges against Chief Ambrogio.
THOMAS J. O'SULLIVAN ADMINISTRATIVE HEARING OFFICER Milford, Conn. July ___, 1991
By the above stipulation dated March 5, 1991, it was agreed that Judge Thomas J. O'Sullivan would also act as a Senior Trial Referee of the Superior Court to decide the issue whether Mayor Carusone had the authority to suspend Chief Ambrogio in the manner in which it was done pending the hearing under 7-278 of the Statutes.
In his letter to Chief Ambrogio dated May 17, 1989, Mayor Carusone stated:
 "Therefore, you are hereby notified that, effective immediately, you are suspended with pay and benefits, pending a hearing as required by State statute, concerning whether or not you should be dismissed from your position."
In three of his letters set out above Mayor Carusone threatened to suspend Chief Ambrogio. Exhibits C-4T, C-5C, and C-5G. Apparently there is no dispute as to whether he had the power CT Page 6041 to so discipline Chief Ambrogio in connection with a specific act Chief Ambrogio did or did not do.
When Mayor Carusone suspended Chief Ambrogio on May 17, 1989 it was done as part of the dismissal process. Section 7-278 of the General Statutes does not specifically provide that Mayor Carusone can do that, nor can the court find any precedent throwing light on this matter. As a matter of logic it would seem that suspension was not in fact part of the dismissal process. Section 7-278 provides for a hearing on the dismissal within ten days of dismissal notice. Apparently the idea was to leave the Chief of Police in his position as Chief to give him an immediate hearing on the charges and to get an early decision finding no just cause or finding just cause and dismissing him.
The Court finds that Mayor Carusone did not have the authority to suspend Chief Ambrogio in the manner in which it was done pending the hearing under 7-278 of the General Statutes.
THOMAS J. O'SULLIVAN TRIAL REFEREE OF THE SUPERIOR COURT Milford, Conn. July __, 1991